IN THE UNITED STATES DISTRICT COURT<br>
FOR THE DISTRICT OF NEW MEXICO<br>
_____

**LAWYERS TITLE INSURANCE
CORPORATION, a Nebraska corporation,**

      **Plaintiff/Counterdefendant,**

**v.**                                             **No. CIV 08-1215 BB/LFG**

**DRAGONFLY DEVELOPMENT, INC.,
a New Mexico corporation,**

      **Defendant/Counterclaimant.**

<u><strong>MEMORANDUM OPINION</strong></u><br>
<u><strong>AND</strong></u><br>
<u><strong>ORDER IN SUPPORT OF PARTIAL SUMMARY JUDGMENT</strong></u>

      **THIS MATTER is before the Court on the motion of Plaintiff/Counterdefendant Lawyers Title Insurance Corporation ("Lawyers") for a summary judgment [doc. 65]. Having considered all submissions of counsel, the Court finds the motion has legal support and a partial summary judgment on Count I of the complaint will be Granted. As to Count II, material facts remain.**

<u><em><strong>Legal Standard of Decision</strong></em></u>

      **Summary judgment is designed to isolate, and then terminate, claims and defenses that are factually unsupported.** *See Celotex Corp. v. Catrett*, **477 U.S. 317, 323-24 (1986).   It is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that**

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, a court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 684, 671 (10th Cir. 1998). If this burden is met, the nonmovant cannot rest on the pleadings, but must set forth specific facts by reference to affidavits, deposition transcripts or other exhibits to support the claim. *See Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir. 1999). Instead, the nonmoving party must present facts such that a reasonable jury could find in its favor. *Id*.

### *Undisputed Facts*

Defendant/Counterclaimant Dragonfly Development, Inc. ("Dragonfly"), purchased an Owner's Policy of Title Insurance ("Policy") from Lawyers. Paragraphs 9(a) and 9(b) of the Policy's Conditions and Stipulations provide:

2

9.    **LIMITATION OF LIABILITY**

(a)    **If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.**

(b)    **In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title as insured.**

In September 2005, Douglas S. Stuart, General Counsel of Rio Grande Title, contacted Julia Olson ("Olson"), claim administrator for Lawyers, in Pasadena, California, to report an alleged boundary dispute between Dragonfly and the owner of an adjacent parcel, GHP Ltd. Company ("GHP"). Within a few weeks Olson agreed to retain Joseph Werntz as counsel and assume Dragonfly's title defense at Lawyers expense.

The thrust of GHP's claim was that a survey overlap existed on the western boundary of the Dragonfly property. By November, Werntz had asked Dragonfly's engineer to prepare a redesign of the layout of the lots on the GHP parcel to demonstrate to Phillip Pickard, GHP's principal, that GHP could create the desired number of lots on its property without contesting the boundary of the insured

Dragonfly property.  On behalf of Lawyers, Olson approved payment of the survey fees on the same day.  Werntz negotiated a Boundary Agreement between Dragonfly and GHP, which was signed by both parties on December 7, 2005, approximately three months after the claim was made.  The Boundary Agreement was recorded in the Bernalillo County Clerk's records on January 11, 2006.  The Boundary Agreement description of the Dragonfly property was consistent with the description of the Dragonfly property as insured by Lawyers and resulted in Dragonfly actually acquiring more land for potential development than had been insured.  Pursuant to the Boundary Agreement, Dragonfly and GHP were to exchange quitclaim deeds confirming their boundary lines.

In February 2006, GHP announced that it would not give a quitclaim deed to Dragonfly based on the Boundary Agreement unless it was paid $200,000.  This was communicated by Werntz to Olson on February 13, 2006.  Werntz advised Olson Dragonfly had the right to stand on and enforce the Boundary Agreement.  However, at that time, Dragonfly was hesitant to bring suit against GHP because it did not want Pickard to file a *lis pendens* that would jeopardize a sale of the property previously negotiated by Dragonfly to Beazer Home.  Werntz advised Olson that Dragonfly had asked Lawyers to pay for a lawsuit to enforce the Boundary Agreement and to seek an injunction.  On April 10, Olson agreed that Lawyers would indeed pay for such a lawsuit and Werntz filed the suit on April 19, 2006, in Bernalillo County.

On August 23, 2006, the respective principals of Dragonfly and GHP, Phillip Lindborg and Phillip Pickard, signed an Agreement to Settle, under which GHP would convey the disputed land to Dragonfly on payment of $45,000, of which Lawyers agreed to pay $35,000 and Dragonfly agreed to pay $10,000.  An additional payment of up to $6,000, of which Lawyers agreed to pay $5,000 and Dragonfly agreed to pay $1,000, was to be made to GHP if a new survey revealed that the area defined as the "Actual Area" was less than the "Depicted Area" shown on an exhibit to the Agreement to Settle.

On September 13, 2006, Werntz delivered to counsel for GHP the settlement payments, including the additional $6,000, and both quitclaim deeds, one already signed by Dragonfly, but GHP again refused to execute the quitclaim deed to Dragonfly.  The state district court entered an order enforcing the settlement on October 31, 2006, and GHP appealed.  The New Mexico Court of Appeals issued a proposed summary affirmance of the settlement order in January 2007.  GHP withdrew its appeal and issued Dragonfly a quitclaim deed on April 6, 2007.

### *Lawyers is Entitled to Summary Judgment on Dragonfly's Contract Claim*

In its First Claim for Relief under its counterclaim, Dragonfly alleges that Lawyers "unjustifiably and inexcusably breached its obligations under the Policy." (Ctrcl. ¶ 11).  Dragonfly alleges Lawyers "failed to diligently establish the title or interest of Dragonfly to the Real Property."  (Ctrcl. ¶ 6(a)).  There can be no legitimate dispute on a material fact on this issue and summary judgment is appropriate.

Title insurance is not a guarantee that a challenge to the insured's title will not be filed.[1]  Rather, it only obligates the insurer to indemnify the insured for a loss sustained when one of the risks insured against actually occurs.  *Ruiz v. Garcia*, 850 P.2d 972, 977 (N.M. 1993); *cf. Horn v. Lawyers Title Ins. Corp.*, 557 P.2d 206, 208 (N.M. 1976) (no duty to search records so failure to discover adverse title did not give rise to liability).  Moreover, policies such as that at bar give the title insurance company alternative means of satisfying its obligation by diligently bringing suit to clear the title rather than immediately paying any claim.[2]

There can be no serious argument that Lawyers failed to cure "the claim of unmarketability of title ... in a reasonably diligent manner by any method, including litigation."  The prior language in the insurance policy widely adopted in the industry required the insured act "within a reasonable time."  The purpose of this language modification is explained as follows:

> Under the "within a reasonable time" phrasing, insureds might claim that 2 or 3 years was not a reasonable time for the insured to have to suffer the consequences of a defective title, and that the insurer owed damages for that period, even if the insurer completed litigation or other actions to establish the title as fast as court procedures and normal practice allowed. Changing the phrasing of this condition to "in a reasonably diligent manner" more clearly says what most courts ultimately held under the

---

[1] *Falmouth Nat'l Bank v. Ticor Title Ins. Co.*, 920 F.2d 1058, 1062 (1st Cir. 1990); *First Fed. Sav. & Loan Ass'n v. Transamerica Title Ins. Co.*, 793 F. Supp. 265, 270 (D. Colo. 1992); *Haines v. Old Republic Nat'l Title Ins. Co.*, 178 P.3d 1086, 1090 (Wyo. 2008).

[2] *Tri-Legends Corp. v. Ticor Title Ins. Co. of Calif.*, 889 S.W.2d 432, 439 (Tex. App. 1994); *George K. Baum Props., Inc. v. Columbian Nat'l Title Ins. Co.*, 763 S.W.2d 194, 201 (Mo. App. 1988); *Elliot v. Chicago Title Ins. Co.*, 462 N.E.2d 640, 644 (Ill. App. 1984).

6

prior phrasing; *i.e.*, that the insured cannot recover interim damages and <u>the insurer is not liable so long as the insurer pursued litigation and other actions in keeping with normal standards for good practice</u> in the particular state or jurisdiction.

Joyce Palomar, 1 TITLE INSURANCE LAW § 10:4 (emphasis added).

Here, Lawyers hired Joseph Werntz as counsel and assumed representation of Dragonfly within a few weeks of its first notice of GHP's position.  Within three months of Lawyers' notification of a dispute, Werntz had negotiated a Boundary Agreement which was executed by both Dragonfly and GHP.  GHP then refused to honor its agreement and, rather than honor its extortionate demand for an additional $200,000, Lawyers filed suit to force GHP to honor its commitment.  This was just four months after GHP's executed Boundary Agreement had been filed in the county records. Nonetheless, Lawyers paid GHP an additional $40,000 in September 2006 but GHP again reneged on the settlement

In October 2006, thirteen months after GHP created the dispute, the state district court entered a judgment enforcing the November 2005 Boundary Agreement.  In another legal maneuver, GHP filed an appeal which it withdrew after the Court of Appeals issued a proposed summary affirmance.  Thus, Lawyers addressed any unmarketability of title manufactured by GHP "in a reasonably diligent manner by

any method, including litigation and the completion of any appeals, therefrom."[3] The law supports Lawyers' motion for summary judgment on the contract claim.

### *Dragonfly's Counterclaim Raises Issues of Fact as to Lawyers' Good Faith and Fair Dealing*

In its Second Claim for Relief, Dragonfly alleges that it entered a sales agreement to sell the subject property for $2,245,000. GHP, of course, raised its boundary dispute in September 2005 immediately making it problematic as to whether Dragonfly could convey marketable title. Dragonfly maintains that it was required to chip in $11,000 when the $40,000 Lawyers agreed to pay was not enough to settle the second GHP claim in August 2006. It also cites evidence that Lawyers "knew and was concerned that its sister company, Commonwealth Land Title Insurance Corporation ("CLTIC") insured GHP, but LTIC [Lawyers] never disclosed this conflict of interest to Dragonfly." (Df.'s Mem. Opp. at 4).

In New Mexico, every insurance contract contains an implied covenant of good faith and fair dealing which means the insurer must give its insured equal consideration. *Salas v. Mountain States Mut. Cas. Co.*, 202 P.3d 801, 805 (N.M. 2009). This duty is also codified in New Mexico law. § 59A-16-20 NMSA (2009 Supp.); *State Farm Mut. Auto. Ins. Co. v. Fennema*, 111 P.3d 491 (N.M. 2005). When an insured

---

[3]         *See First Fed. Sav. & Loan v. Transamerica Title Ins. Co.*, 713 F. Supp. at 269; *Holmes Dev. LLC v. Cook*, 48 P.3d 895, 902 (Utah 2002); *First Fed. Sav. Bank of Brunswick v. Stewart Title Guaranty Co.*, 451 S.E.2d 916, 926 (S.C. App. 1994); *Martinka v. Commonwealth Land Title Ins. Co.*, 836 S.W.2d 773, 777 (Tex. App. 1992); *Baker v. First Am. Title Ins. Co.*, 2009 WL 3463973 (Az. App.); *Lawyers Title Ins. Co. v. Synergism One Corp.*, 572 So. 2d 517, 518 (Fla. App. 1990).

presents adequate evidence of a failure to disclose a conflict of interest, its good faith *vis-à-vis* with regard to the interest of the insured becomes a jury question.[4]  Summary judgment as to the second claim for relief is therefore not appropriate on the present record.

**O<small>RDER</small>**

For the above stated reasons, summary judgment is GRANTED on Lawyers' contract claim but DENIED on the claim of good faith and fair dealing.

Dated this 10th day of March, 2010.

B<small>RUCE</small> D. B<small>LACK</small>
United States District Judge

---

[4]      *Menchise v. Liberty Mut. Ins. Co.*, 932 So. 2d 1130, 1133 (Fla. App. 2006); *Pugh v. North American Warranty Servs., Inc.*, 1 P.3d 570, 576 (Utah App. 2000) *Marquis v. Farm Family Mut. Ins. Co.*, 628 A.2d 644, 648 (Me. 1993); *cf. G&G Servs., Inc. v. Agora Syndicate, Inc.*, 993 P.2d 751, 760 (N.M. App. 1999) (finding sufficient evidence on statutory duty).

9
